

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 JUL 16 PM 1: 58

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel.,WILLIAM ST. JOHN LACORTE, MD | * <br> * <br> * <br> * | CIVIL ACTION<br><br>NUMBER:99-3807 |
| Plaintiffs | * | SECTION: "I" (4) |
| | * | |
| | * | |
| v. | * | |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendants | * | |
| * | * * | |

**UNITED STATES' STATEMENT OF INTEREST**
**ON DEFENDANT'S MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

The United States respectfully submits this Statement of Interest on Defendant Merck and

Co., Inc.'s ("Merck") Motion to Dismiss.  The purpose of this Statement of Interest is to address

certain misstatements of law contained in Merck's legal memorandum in support of its motion.

Although the United States has not intervened in this action, it remains the real party in interest.[1]

_____

[1] On January 21, 2003, the United States filed a Notice of the United States That it is Not
Intervening at This Time (Notice).  In its Notice, the United States informed the Court that its
investigation had not been completed.  The United States respectfully advises this Court that its
investigation into the allegations in this matter is no longer active and that counsel responsible
for this matter have no present intention to seek leave to intervene.

___ Fee_____
___ Process_____
_X_ Dktd_____
_✓_ CtRmDep_____
___ Doc. No._____

1

See Searcy v. Philips Electronics, 117 F.3d 154, 156 (5th Cir.1997) (citing United States ex rel.

Milam v. University of Texas M.D. Anderson Cancer Center, 961 F.2d 46, 48-49 (4th Cir.1992)).

Because the False Claims Act, 31 U.S.C. § 3729 *et seq.*, (the "FCA"), is the primary tool of the

United States to redress fraud upon the Government, the United States has a keen interest in the

development of the law in this area.  See, e.g., United States ex rel. Bidani v. Lewis, __ F. Supp.

2d __ 2003 WL 925998 (N.D. Ill. March 5, 2003); United States ex rel. Barrett v. Columbia/HCA

Health Care Corp., 251 F. Supp. 2d 28 (D.D.C. 2003); United States ex rel. Pogue v. Diabetes

Treatment Centers, 238 F. Supp. 2d 258 (D.D.C. 2002).

      Merck's motion to dismiss has been brought pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6).

The United States takes no position on defendant's arguments that the relator's Consolidated

Complaint fails to meet the requirements of Fed. R. Civ. P. 9(b).  This Statement of Interest is

limited to addressing certain statements made by Merck in connection with its arguments under

Fed. R. Civ. P. 12(b)(6).

      For reasons set forth below, however, the United States does not believe that it is

necessary at this time for this Court to reach defendant's Rule 12(b)(6) arguments on the current

state of the record.  In fact, because ambiguities in Dr. LaCorte's complaint require Merck and

therefore this Court to engage in an exercise of inference and surmise so as to frame the issues as

Merck would interpret them, the United States submits that Merck's arguments pursuant to Rule

12(b)(6) should not be addressed at this time.  Nevertheless, should this Court deem it necessary

to reach defendant's arguments under Rule 12(b)(6), the United States hopes this submission will

assist the Court in a proper articulation of the relevant legal principles.

## ARGUMENT

A.    A False Claims Act Violation Can be Predicated Upon a Violation of Law,
Rules and Regulation

In its Memorandum of Law, Merck argues that the Consolidated Complaint should be

dismissed under Rule 12(b)(6) because, to the extent the allegations can be understood, they do

not state claims under the False Claims Act.  Specifically, Merck suggests that no FCA claim

may be predicated upon the Food Drug and Cosmetic Act (FDCA) or the Louisiana Medical

Rules. *See* Def. Mem. at 15.  Citing <u>United States ex rel. Thompson v. Columbia/HCA</u>

<u>Healthcare</u>, 125 F.3d 899, 902 (5th Cir. 1998), and <u>United States ex rel. Mikes v. Straus</u>, 274

F.3d 687, 699 (2d Cir. 2001), Merck asserts that "[i]t is well settled that violation of laws, rules,

or regulations do not create a cause of action under the FCA." Def. Mem. at 15-16.  Related to

this argument, Merck contends that a claim is false within the meaning of the FCA "<u>only</u> if (a)

the government has conditioned payment of a claim upon a claimant's certification of compliance

with a statute or regulation <u>and</u> (b) the claimant falsely certifies compliance with that statute or

regulation." Def. Mem. at 19.  Merck then argues that with respect to the "switching allegations"

in the relator's Consolidated Complaint, the FCA claim is defective as a matter of law because

Dr. LaCorte has not alleged, <u>inter alia</u>, that 1) the Government conditioned payment upon a

certification of compliance with the FDCA or the Louisiana Medical Rules and 2) the claimant

falsely certified compliance. <u>See</u> Def. Mem. at 19.

Merck's argument is incorrect as a matter of law because it misstates the requisite

elements for establishing a claim under the FCA.  First, contrary to Merck's argument, there is a

substantial body of authority establishing that the violation of a law, rule, regulation, or contract

provision can, in appropriate circumstances, give rise to a violation of the FCA.[2] The appropriate inquiry for a court considering whether the violation of a statute, regulation, or contract provision gives rise to FCA liability is whether there is a nexus between compliance with the statute, regulation, rule, or contract provision and a claim for payment, i.e., whether compliance is a prerequisite to payment. In other words, the violation of a statute, regulation, or contract provision will give rise to FCA liability if noncompliance affects entitlement to payment.

FCA cases across the country have catalogued the variety of means by which the nexus between compliance and payment has given rise to FCA liability. Generally, there are three category of cases in which courts have found FCA liability to arise from a failure to comply with a statute, regulation, or contract provision: (1) the item or services for which the claim is submitted were defective. See, e.g., Mikes, 274 F.3d at 703; United States ex rel. Lee v. Smith-Kline Beecham., 245 F.3d 1048 (9th Cir. 2001);  (2) the defendant makes or causes to be made a false express certification of compliance with the applicable statute, regulation, or contract provision in order to get a claim paid. See, e.g., Thompson, 125 F.3d at 902; or (3) compliance with statute, regulation, or contract provision was a prerequisite to payment. See e.g., United States ex rel. Augustine v. Century Health Services, Inc., 289 F.2d 409, 415 (6th Cir. 2002);

---

[2] In Thompson, the Fifth Circuit stated that "claims for services rendered in violation of a statute do not *necessarily* constitute false or fraudulent claims under the FCA." Thompson, 125 F.3d at 902. (emphasis added). The Fifth Circuit did not state or suggest that claims for services rendered in violation of a statute can never give rise to a claim under the FCA. Indeed, the Fifth Circuit remanded the case back for the district court to consider whether claims for services rendered in violation of the Stark laws are, in and of themselves, false or fraudulent claims under the FCA. Id. at 903. On remand, the district court concluded that compliance with the Antikickback Statute and a hospital's certification thereof is a "condition of payment" under Medicare. United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 20 F. Supp. 2d 1017, 1047 (S.D. Tex. 1988) ("Thompson II").

United States v. TDC Mgmt. Corp., Inc., 288 F.3d 421 (D.C. Cir. 2002).[3]

Merck thus misstates the law in arguing that FCA liability arises "only if" (a) the government conditions payment upon a claimant's certification of compliance and (b) the claimant falsely certifies compliance with a statute or regulation. See Def. Mem. at 18-19. Merck's argument is incorrect because it implies that a false express certification of compliance is a necessary element for FCA liability to arise. While a false express certification of compliance does indeed give rise to FCA liability, as in the second category of cases identified above, it is not the only means by which FCA liability can arise. Merck's argument ignores the third category of cases identified above -- cases in which liability exists based upon the knowing violation of a statute, regulation, or contract provision that has a nexus to payment.

In these cases, FCA liability attaches notwithstanding the absence of an express certification. Many parties and courts use the short-hand term "implied certification" to describe such cases. See, e.g., Augustine, 289 F.3d at 415. In each such case, presentment of the claim is a representation of entitlement to payment -- a representation of entitlement made false by the violation of a statute, regulation, or contract provision.

The plain language of the FCA establishes that liability may attach for the submission of a false claim even in the absence of an express false statement. While 31 U.S.C. § 3729(a)(2) premises liability on the "use of a false record or statement to get a false or fraudulent claim paid," § 3729(a)(1) only requires the submission of a "false and fraudulent claim for payment or approval" without the additional element of a false record or statement. See United States ex rel. Shaw v. AAA Eng'g & Drafting, Inc., 213 F.3d 519, 531-32 (10th Cir. 2000) (highlighting

_____

[3] In each such category, FCA liability attaches only if the defendant has "knowledge," as defined by the FCA, of non-compliance.

distinction between sections (a)(1) and (a)(2)).

In addition, the legislative history of the 1986 Amendments to the FCA indicates that Congress intended the FCA to apply whenever a defendant was ineligible for payment, even if the defendant provided the contract or service requested by the Government. See S. Rep. No. 99-345 at 9 reprinted in 1986 U.S.C.C.A.N. 5266, 5274. The legislative history further indicates that a false claim under the FCA "may take many forms, the most common being a claim for goods or services not provided, *or provided in violation of contract terms, specifications, statute or regulation.*" Id. at 5274 (emphasis added); see also TDC Mgmt, 288 F.3d at 428.

Consistent with the statute and its legislative history, courts for over 50 years have held that claims submitted by defendants who break the law to obtain the opportunity to bill violate the FCA, regardless of whether the claimant expressly certified or represented compliance with requirements prohibiting such conduct. See, e.g., United States ex rel. Marcus v. Hess, 317 U.S. 537, 544 (1943) (the FCA's provisions are broad and "indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud."); see also United States v. CFW Construction Co., 649 F. Supp. 616 (D.S.C. 1986) (all claims under contract tainted by rigged bids were false under the FCA). Other federal courts have also imposed FCA liability on defendants who submitted claims while engaged in prohibited financial conflicts of interest. See, e.g., TDC, 288 F.3d at 426 (ombudsman's claims triggered FCA liability because they failed to disclose conflicts of interest, deemed "information critical to the decision to pay" despite the absence of a specific contractual prohibition or disclosure requirement); United States v. General Dynamics Corp., 19 F.3d 770 (2d Cir. 1994) (United States properly stated a claim under the FCA and common law by alleging the payment of

6

kickbacks by the subcontractor to the prime contractor, and the inclusion of those kickbacks in the prime contractor's cost data); United States v. Killough, 848 F.2d 1523 (11th Cir. 1988) (FCA liability based on the illegal payment of kickbacks in exchange for the award of certain federal contracts). In none of these cases did the absence of an express certification of compliance prevent liability form attaching. Rather, the relevant inquiry was the existence of a nexus between compliance and payment. Most recently, the Sixth Circuit adopted the "implied certification" theory of liability finding that even where a claim was not expressly false at the time it was filed, "liability can attach if the claimant violates a continuing duty to comply with the regulations on which payment is conditioned." Augustine, 289 F.3d at 415.[4]

B.      A Violation of the Food Drug and Cosmetic Act Can Give Rise to FCA
        Liability

In this case, Dr. LaCorte alleges violations of the FDCA and the Louisiana practice of medicine rules. The FDCA is a comprehensive statute that covers a broad spectrum of conduct relating to the manufacture, marketing, and promotion of drug products. As stated earlier, the United States takes no position on whether Dr. LaCorte has set forth sufficient facts, which, if true, would establish that Merck's conduct violated a specific statutory or regulatory provision of the FDCA. The United States simply wishes to make clear its position that compliance with provisions or requirements of the FDCA can bear a nexus to payment, such that noncompliance

---

[4]  The decision in Augustine stands in apparent contrast to the Second Circuit's decision in Mikes, where the Court cautioned against a broad application of the "implied certification" theory in certain types of health care cases. Mikes, 274 F.3d at 699. A careful review of the cases reveals, however, that the differences in the respective outcomes resulted from the absence of a nexus in Mikes between the underlying violation of a statute, regulation, or contract term, and payment. In other words, the alleged violation in Mikes was not a prerequisite or a condition of payment. See also United States ex rel. Willard v. Humana Health Plan of Texas, 2003 WL 21467963 (5th Cir. June 26, 2003)(declining to address implied certification theory because compliance with regulations that were allegedly violated was not a condition of payment).

can potentially give rise to a violation of the False Claims Act.  See United States ex rel. Franklin

v. Parke-Davis, 147 F. Supp. 2d 39, 52-53 (D. Mass. 2001) ("failure of Congress to provide a

cause [sic] action for money damages against a pharmaceutical manufacturer for marketing off-

label drugs does not preclude an FCA claim where the manufacturer has knowingly caused a

false statement to be made to get a false claim paid or approved by the government in violation of

31 U.S.C. § 3729(a)").  Indeed, certain provisions of the FDCA expressly prohibit drug

manufacturers from marketing or promoting a drug for a use that has not been approved by the

FDA.  See 21 U.S.C. § 331(d).  And such approval may be a condition of payment under the

Medicare or Medicaid programs.  See Franklin, 147 F. Supp. 2d at 44-45.  To grant Merck the

relief it seeks under Rule 12(b)(6), this Court would have to conclude as a matter of law that no

such nexus can possibly exist between a violation of the FDCA and payment.  The United States

respectfully submits that this Court need not address this issue at this early stage of the litigation,

much less grant Merck the relief it seeks under Fed. R. Civ. P. 12(b)(6), which could have far

reaching implications of import to the United States.  A decision on this issue is entirely

unnecessary at this time and should be based, if at all, upon a properly developed factual record,

which is not currently before this Court.

> C.     A Violation of the Antikickback Statute Can Give Rise to FCA Liability

Similarly, the United States takes no position on whether Dr. LaCorte's Consolidated

Complaint satisfies the requirements of Fed. R. Civ. P. 9(b), with respect to his claim that Merck

violated the Antikickback Statute (AKS), 42 U.S.C. § 1320a-7(b).  As a basis for dismissal under

Fed. R. Civ. P. 12(b)(6), however, Merck argues that Dr. LaCorte has failed to allege a false

certification of compliance with the AKS or that the government conditioned payment on such a

certification. See Def. Mem. at 22-23 (citing Franklin, 147 F. Supp. 2d at 51). Contrary to

Merck's argument, however, an express certification of compliance with the AKS or that the

government conditioned payment on such a certification is not necessary for FCA liability to

arise because the statute itself establishes that compliance with the AKS is a prerequisite to

payment. Specifically, the statutory text of the AKS makes the nexus between compliance and

payment abundantly clear. See Bidani, 2003 WL 925998, *2 ("[c]ompliance with the AKS is

thus central to the reimbursement plan of Medicare"). In other words, FCA liability exists as a

matter of law when a violation of the AKS results in the knowing submission of a claim for

payment. Therefore, pleading the existence of such a certification is not essential to stating a

claim for liability under the FCA, based upon a violation of the AKS.

The AKS is a criminal statute codified within the Social Security Act that imposes a

heavy penalty for any violation of its provisions. The statute establishes that the reimbursement

scheme Congress designed for the Medicare and Medicaid programs is one in which referrals

could not be induced by kickbacks and thus, that claims on such referrals would not be presented

for payment. Accordingly, as a matter of law, under this statutory scheme, compliance with the

AKS is a prerequisite to receive or retain payment from the Medicare or Medicaid programs. See

Bidani, __ F. Supp. 2d at __ 2003 WL 925998, * 2; Barrett, 251 F. Supp. at 32; Pogue, 238 F.

Supp. 2d at 263-65; Thompson II, 20 F. Supp. at 1047.[5]

_____

[5] In United States ex rel. Barmack v. Sutter Corp., 2002 WL 987109 (S.D.N.Y. May 14, 2002), a
district court rejected the relator's claim for failure to plead a causal relation between the alleged
AKS violations and claims for reimbursement, failure to allege certification of compliance with
the AKS, and failure to allege that the government relied upon such certification to make
payments. The United States did not appear in that case, present briefing, or oral argument. In
fact, the district court acknowledged that no party had even briefed the viability of the legal
theory on that motion. The United States submits that skeptical courts, when presented with full
briefing on the issue would reach a different result than did the Court in Barmack. Compare

Once again, the United States emphasizes that it is not necessary to reach these issues of law at this time based upon the current state of the record. To the extent Merck is correct in suggesting that Dr. LaCorte has failed to set forth sufficient facts to satisfy the requirements of Fed. R. Civ. P. 9(b), Dr. LaCorte should be afforded an opportunity to amend his complaint pursuant to Fed. R. Civ. P. 15(a), to provide the requisite degree of detail.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court decline to reach the arguments set forth by Merck on its motion to dismiss pursuant to Rule 12(b)(6). To the extent this Court is inclined to reach the issues, the United States respectfully requests that Merck's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be denied.

Respectfully Submitted,

JIM LETTEN
United States Attorney

PAUL S. WEIDENFELD (13319)
Assistant United States Attorney
United States Attorneys Office
Hale Boggs Federal Building
501 Magazine Street, 2nd Floor
New Orleans, Louisiana 70130
Tel: (504) 680-3011

MICHAEL F. HERTZ
LAURENCE FREEDMAN
SANJAY M. BHAMBHANI
Attorneys, Civil Division

---

United States ex rel.Obert-Hong v. Advocate Health Care, 211 F. Supp. 2d 1045, 1051 (N.D. Ill. 2002) (Moran, J.) (noting, but not addressing the issue of whether falsely certifying compliance with AKS can give rise to an FCA claim) with Bidani, __ F. Supp. 2d at __ 2003 WL 925998, * 2-3 (Moran, J.) (after full briefing, holding that compliance with the AKS is a condition of payment and material to payment as a matter of law).

10

Commercial Litigation Branch
Post Office Box 261
Ben Franklin Station
Washington, DC  20044
Tel: (202) 305-0546

Dated: July 15, 2003

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of July, 2003, the United States' Statement of Interest

on Defendant's Motion to Dismiss was served upon the following by facsimile transmission and

Federal Express:

Harry Rosenberg, Esq.
Phelps Dunbar, LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
Tel: 504-566-1311
Fax: 504-568-9130

Ethan M. Posner, Esq.
Covington & Burling
1201 Pennsylvania Ave., N.W.
Washington, DC 20004-2401
Tel: 202-662-5317
Fax: 202-778-5317

J. Marc Vezina, Esq.
Vezina and Gattuso, L.L.C.
401 Weyer Street
Gretna, Louisiana 70054
Tel: 504-368-5223
Fax: 504-361-3624

Sanjay M. Bhambhani, Esq.