

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JAN 21  PM 4:40

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, *EX REL*.,** | * | **CIVIL ACTION NO. 99-3807** |
| **WILLIAM ST. JOHN LACORTE, M.D.** | * | |
| | * | **SECTION  I** |
| **versus** | * | |
| | * | **MAGISTRATE  4** |
| **MERCK & CO., INC.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MOTION FOR LEAVE TO FILE COMPLAINT-IN-INTERVENTION

**NOW INTO COURT**, through undersigned counsel, comes the State of Louisiana, through

its Attorney General, Charles C. Foti, Jr., who files this Motion for Leave to File Complaint-in-

Intervention, as a matter of right and/or with permission pursuant to Federal Rule of Civil Procedure

24(a) and (b), for the reasons set forth in the accompanying Memorandum in Support of its Motion

for Leave to File Complaint-in-Intervention.

As stated in the Certification filed herewith, and pursuant to Rule 7.6.E of the Uniform Local

Rules of the United States District Courts, counsel of record have been contacted to obtain consent

for the filing and granting of this Motion to File Complaint-in-Intervention.  Counsel for Relator,

the United States of America, ex rel William St. John LaCorte, M.D., consents to the filing and

1

Fee
Process
Dktd
CtRmDep
Doc. No.

granting of the Motion for Leave to File Complaint-in-Intervention.   However, counsel for defendant, Merck & Co., Inc. opposes the filing and granting of this Motion for Leave to File Complaint-in-Intervention.

      **WHEREFORE**, the State of Louisiana through its Attorney General Charles C. Foti, Jr., prays that this Honorable Court grant its Motion for Leave to File its Complaint-in Intervention in the captioned matter.

                                            Respectfully submitted,

                                            **CHARLES C. FOTI, JR., Attorney General**

**By:** *Michelle L. Maraist*

                                            **E. JOHN LITCHFIELD, T.A. (#8622)**
                                            **MICHELLE L. MARAIST (#21739)**
                                            **Special Assistant Attorneys General**
                                            **BERRIGAN, LITCHFIELD, SCHONEKAS,**
                                                **MANN, TRAINA & THOMPSON, LLC**
                                            400 Poydras Street, Suite 2000
                                          New Orleans, Louisiana 70130
                                          Telephone: (504) 568-0541
                                          Fax: (504) 561-8655

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel, by facsimile and First Class, U.S. Mail, postage prepaid and properly addressed this 21st day of January, 2004.

**MICHELLE L. MARAIST**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *EX REL.*, | * | CIVIL ACTION NO. 99-3807 |
| WILLIAM ST. JOHN LACORTE, M.D. | * | |
| | * | SECTION I |
| versus | * | |
| | * | MAGISTRATE 4 |
| MERCK & CO., INC. | * | |
| DEFENDANT | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## LOCAL RULE 7.6E CERTIFICATE

The undersigned counsel certifies that counsel of record have been contacted to obtain

consent for the filing and granting of the Motion to File Complaint-In-Intervention.  Counsel for

Relator, the United States of America, ex rel William St. John LaCorte, M.D., consents to the filing

and granting of the Motion for Leave to File Complaint-In-Intervention.  The undersigned contacted

counsel for defendant, Merck & Co., Inc. and he has not advised whether Merck opposes the filing

and granting of this Motion for Leave to File Complaint-in-Intervention.

Page 1 of 2

Respectfully submitted,

**CHARLES C. FOTI, JR., Attorney General**

By: _____

**E. JOHN LITCHFIELD, T.A. (#8622)**
**MICHELLE L. MARAIST (#21739)**
**Special Assistant Attorneys General**
**BERRIGAN, LITCHFIELD, SCHONEKAS,**
**    MANN, TRAINA & THOMPSON, LLC**
400 Poydras Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 568-0541

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel, by facsimile and First Class, U.S. Mail, postage prepaid and properly addressed this 21st day of January, 2004.

_____
**MICHELLE L. MARAIST**

Page 2 of 2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, *EX REL*.,** | * | **CIVIL ACTION NO. 99-3807** |
| **WILLIAM ST. JOHN LACORTE, M.D.** | * | |
| | * | **SECTION  I** |
| **versus** | * | |
| | * | **MAGISTRATE  4** |
| **MERCK & CO., INC.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO FILE
### COMPLAINT-IN-INTERVENTION

The State of Louisiana, through its Attorney General, Charles C. Foti, Jr. files this Motion for Leave to File Complaint in Intervention seeing to intervene as a matter of right and/or with this Honorable Court's permission pursuant to Rule 24 of the Federal Rules of Civil Procedure. To date, there are only two parties to the captioned-lawsuit: the Relator, the United States of America, ex rel, William St. John LaCorte, M.D. ("Relator") and defendant, Merck & Co., Inc. ("Merck" or "defendant"). Pursuant to Rule 7.6E of the Uniform Local Rules of the United States District Courts, counsel of record for these parties have been contacted to obtain consent for the filing and granting of this Motion to File Complaint-in-Intervention. Relator consents to filing and granting of this

motion. Merck has expressed opposition to the filing and granting of the Motion for Leave to File Complaint in Intervention.

## I. PROCEDURAL BACKGROUND

On or about December 19, 1999, Relator, William St. John LaCorte, M.D., on behalf of himself and the United States of America, its departments and agencies, including the Department of Health & Human Services ("DHHS"), filed this lawsuit under the *qui tam* provisions of the False Claims Act, 31 U.S.C. §§ 3729-3733. This lawsuit remained under seal until on or about January 21, 2003, when this Honorable Court ordered that the matter be unsealed. On or about February 7, 2003, Relator filed the Consolidated Complaint for Money Damages and Civil Penalties Under the False Claims Act. Thereafter, defendant, Merck filed a Motion to Dismiss Consolidated Complaint, seeking dismissal of the Consolidated Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. Merck's Motion to Dismiss Consolidated Complaint is set for hearing on July 23, 2003.

To date, no Preliminary Conference has been held and no scheduling order has been issued by this Honorable Court. Therefore, no deadlines or cutoff dates have been issued and there is no trial date in this matter.

2

## II. FACTUAL BACKGROUND AND THE UNDERLYING ACTION

In the instant case, the underlying action was brought by Relator pursuant to the False Claims

Act, 31 U.S.C. § §3729, *et seq*. against Merck.  In the lawsuit, Relator alleges that Merck, among

other things, devised a pricing scheme for its prescription drug Pepcid.  Relator claims that Merck

while Merck charged approximately $0.10 per tablet through a competitive pricing scheme to

hospitals and other health care institutions, it charged approximately $1.65 per tablet to the Medicaid

Program or other federal programs.

In general, Relator's claims against Merck center on Merck's pricing scheme with respect

to the prescription H2 blocker, known as "Pepcid."  Relator contends that Merck developed and

implemented a pricing scheme which operated to deprive the federally and state funded Medicaid

Program from realizing  the full benefit of prescription drug pricing directed by law.  Specifically,

the Medicaid Program is only to pay the "best price" for covered drugs, as defined by law.  As a

result of Merck's pricing scheme, Relator contends that the federal government has been required

to expend funds substantially in excess of the amounts required by law and substantially in excess

of the amounts paid by other medical and health care facilities for the prescription drug, Pepcid.

Relator also contends that in addition to Merck's pricing scheme, Merck filed false claims and

reports to government agencies for the computation of prices for rebate programs administered by

3

the federal and state governments.   These false claims and reports directly resulted in the overpayment by federal and state governments through their respective rebate programs.

In addition to the foregoing, Relator contends that Merck's pricing scheme provided for significant discounts to hospitals and other health care facilities for the prescription drug, Pepcid. As a result of this pricing scheme, Relator contends that these hospitals and other health care facilities were wrongfully and unlawfully induced to switch valid orders for other H2 blockers to Pepcid.

Relator contends that in the employment of this pricing scheme, Merck committed various violations of the False Claims Act and other laws, including the following:

1. Charging fraudulently inflated prices for Pepcid to Medicaid for payment and approval;

2. Using false statements to have the false and fraudulent claims paid by the Medicaid Program.

3. Conspiring to defraud the United States by causing false and fraudulent claims to be paid by the Medicare Program.

4. Offering and selling Pepcid to hospitals and other health care institutions for a price at vastly reduced prices than the prices charged to the Medicaid Program.

4

5.  Creating and implementing a pricing scheme that directly induced hospitals and other related health care institutions to switch orders for other H2 blockers to Pepcid, without obtaining permission or consent from a licensed physician or practitioner.  Merck did so without adequately medical testing and research on the effects of Pepcid on patients.  Also, this inducement scheme also unlawfully usurped independent judgments of medical professionals and physicians.

6.  Filing false claims and reports for the computation of prices by rebate programs administered by the federal government and states.

The State of Louisiana contends that it has an interest which is directly related to the transactions which forms the basis of the underlying lawsuit.  As a result of the transactions and unlawful acts of Merck, which are the subject of the underlying lawsuit, the State of Louisiana and its citizens have sustained damages compensable under State law, including, but not limited to the provisions of the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq.*; Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46: 437.1, *et seq.*; Louisiana's Anti-Monopoly Statute, La.R.S. 51: 121, *et seq.*; Louisiana law governing fraud and Louisiana law governing unjust enrichment. The Attorney General of the State of Louisiana, has the authority to assert these actions by virtue of statutes and laws cited above, as well as by virtue of the authority vested by the Louisiana Constitution Article IV, § 8; and the authority of the Attorney

5

General of Louisiana to institute and prosecute any and all suits deemed necessary for the protection

of the interests and the rights of the State, La.R.S. 13:5036; and under the State of Louisiana's

*parens patriae* authority.

### III.  LAW AND ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure governs intervention as of right and

permissive intervention in actions.  The Fifth Circuit Court of Appeals has stated that two important

purposes of Rule 24 are: "to foster economy of judicial administration and to protect non-parties

from having their interests adversely affected by litigation conducted without their participation."

Stallworth v. Monsanto Company, 585 F.2d 257, 265 (5th Cir. 1977).  With these purposes in mind,

the State of Louisiana submits that it should be granted leave to file its Complaint-in-Intervention

in this action, as stated more fully below.

#### A. Intervention as of Right

Federal Rule of Civil Procedure 24(a) governs interventions of right.  In pertinent part, Rule

24(a)(2) states:

> Upon timely application anyone shall be permitted to intervene in an
> action . . . when the applicant claims an interest relating to the
> property or transaction which is the subject of the action and the

6

> applicant is so situated that the disposition of the action may as a
> practical matter impair or impede the applicant's ability to protect that
> interest, unless the applicant's interest is adequately represented by
> existing parties.

Fed. R. Civ. P. 24(a).

The United States Fifth Circuit Court of Appeals has stated: "Federal courts should allow intervention where no one would be hurt and the greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). A four prong test is applied by courts in making the determination as to whether a party is entitled to intervene as of right under Rule 24(a): (1) the application for intervention is timely; (2) the applicant asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which she seeks to intervene; (3) the applicant is situated so that the disposition of the action may, as a practical matter, impair his ability to protect that interest; and (4) the existing parties do not adequately represent the applicant's interest. See *Ford v. City of Huntsville*, 242 F3d 235, 239 (5th Cir. 2001); *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996); *Espy*, 18 F.3d at 1204-05; *Stallworth*, 558 F2d at 263-67 (5th Cir. 1977). In the instant case, the State of Louisiana's application for intervention satisfies these four requirements to assert an intervention as of right of Rule 24(a)(2).

7

**1. Timeliness.** "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). Timeliness is to be determined from all of the circumstances. Courts consider four factors in determining whether a motion to intervene is timely: (1) the length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it sought to intervene; (2) the prejudice that existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonable should have known of its interest in the case; (3) the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) whether unusual circumstances militate for or against a determination that the application is timely. There are no absolute measures of timeliness; it is determined from all the circumstances. *Id.*; *Edwards*, 78 F.3d at 1000. "These factors are a framework and 'not a formula for determining timeliness.'" *Doe #1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) citing *Edwards*, 78 F.3d at 1004. We will now address the four factors considered in evaluating the timeliness of an application for intervention:

      a.      **Length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it sought to intervene.**

"Courts should discourage premature intervention [because it] wastes judicial resources."

*Doe #1*, 256 F.3d at 376, citing *Espy*, 18 F.3d at 1206. "[T]he timeliness clock runs either from the

time the applicant knew or reasonably should have known of his [stake in the case into which he

seeks to intervene] or from the time he became aware that his [stake] would no longer be protected

by the existing parties to the lawsuit." *Doe #1*, 256 F.3d at 377, citing *Edwards*, 78 F.3d at 1000

(internal quotations and citations omitted). "The timeliness clock does not run from the date the

potential intervenor knew or reasonable should have known of the existence of the case into which

he seeks to intervene." *Espy*, 18 F.3d at 1206. See *Stallworth*, 558 F.2d at 265 ("The time that the

would-be intervenor first became aware of the pendency of the case is not relevant to the issue of

whether his application was timely.")

In the instant case, the State of Louisiana filed its Motion for Leave to File Intervention when

its investigation into the issues raised in the underlying complaint were investigated by the Attorney

General's office. It was only after this investigation and the determination by the Attorney General

that the State of Louisiana and its citizens' interests were at stake in the underlying litigation, that

it was legally proper for the State of Louisiana to file its application for intervention into this matter.

If the State of Louisiana applied for intervention any sooner, the application would rightfully be

deemed premature. As stated above, courts discourage the premature application for intervention.

9

In addition, the underlying lawsuit was filed under seal pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. This Honorable Court issued the order that the Complaint be unsealed and that it be served on defendant on or about January 21, 2003. It was during this time that the State of Louisiana's Attorney General's office investigated and discovered its interest and the interests of its citizens in this lawsuit. Accordingly, it was only after the underlying Complaint was unsealed that the State of Louisiana began looking into Merck's dealings in the State of Louisiana with respect its sale of the prescription drug, Pepcid. Thus, the time between the discovery of an interest in the litigation and the filing of this application to intervene is minimal. Therefore, the State of Louisiana satisfies the first factor in the timeliness analysis in that it did not act in an untimely fashion when it moved to intervene to protect its various interests. See *Edwards*, 78 F.3d at 1000-01. This court has stated that "[a]t any stage before judgment, delay is pertinent only if the prospect of undue prejudice and procedural disruption first exist." *Jimenez v. General Motors Corp.*, 2003 LEXIS 4079 (E.D.La. 2003). As will be discussed below, the insignificant delay at issue will create no prejudice or procedural disruption in this action.

      **b.**    **The existing parties to this lawsuit would not have suffered any less prejudice had the State of Louisiana filed sooner.**

"The second factor is concerned 'only [with] that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonable should have known about his [stake] in the action'." *Doe #1*, 256 F.3d at 378 citing *Stallworth*, 558 F.2d at 265. Also, the prejudice "must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation. *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 424 (5th Cir. 2002) citing *Espy*, 18 F.3d at 1206.

In the instant case, the existing parties will not sustain any prejudice that could result from the insignificant delay by the State of Louisiana in seeking intervention. In this case, the delay is insignificant with respect to the time lapse between the unsealing of the lawsuit on January 21, 2003 and the filing of the instant application. See *Ceres v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992)("because he moved just after learning this action was pending, there was no prejudice to existing parties."). In the instant case, the underlying lawsuit is in its early stages. There is no scheduling order issued in this matter and no trial date has been set. Accordingly, the State of Louisiana submits that no prejudice would result to the existing parties as a result of this Honorable Court granting the State of Louisiana's Motion for Leave to Intervene. Clearly, the State of Louisiana may be assimilated into these proceedings without any disruption of the orderly process of this court.

11

### c. If the State of Louisiana is not allowed to intervene, it will be prejudiced.

To deny intervention would deprive the State of Louisiana of the opportunity to exercise "the legal rights associated with formal intervention, namely the briefing of issues, presentation of evidence and the ability to appeal." *Edwards*, 78 F.3d at 1003 (quoting *Espy*, 18 F.3d at 1207).

As a substantive matter, an adverse ruling could significantly affect the State of Louisiana's ability to regulate the state Medicaid Program with respect to its dealings with Merck and the pricing scheme associated with the sale of Pepcid in the State of Louisiana.

### d. The existence of unusual circumstances.

In the instant case, the only unusual circumstance identified is the fact that the lawsuit had been sealed for a period of three years pursuant to the procedural requirements of the FCA. In addition, the claims against Merck involve the concealment and falsification of pricing data reported to the State of Louisiana with respect to Merck's prescription medication, Pepcid. Merck's alleged concealment, falsification and fraud weigh in favor of a finding that the State of Louisiana's application for intervention is timely.

### 2.    The interest the State of Louisiana asserts is related to the transaction that forms the basis of the controversy in the Relator's lawsuit.

12

The Fifth Circuit has warned against defining "property or transaction" too narrowly. *Ford v. City of Huntsville,* 242 F.3d 235, 240 (5ᵗʰ Cir. 2001); *Ceres Gulf v. Cooper*, 957 F.2d 1203 (5ᵗʰ Cir. 1992). An intervenor asserts an interest that is related to the property or transaction that forms the basis of the controversy in the case into which he seeks to intervene, if the potential intervenor has a "direct, substantial, [and] legally protectable" interest in the property or transaction that forms the basis of the controversy in the case into which he seeks to intervene. *Espy*, 18 F.3d at 1207; Edwards, 78 F3d at 1004. The "interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Espy*, 18 F.3d at 1207 (internal quotes omitted).

The State of Louisiana's interests in this litigation are several and substantial. First, the State of Louisiana *qua* state has an economic interest the underlying case in that the State of Louisiana has contributed excessive amounts of money for the overpayment of the drug, Pepcid. Second, the State of Louisiana, through its Attorney General, has an interest in the regulation and administration of its Medicaid Program and the overpayments made by the Medicaid Program for the drug, Pepcid. Third, the State of Louisiana has an important sovereign interest in seeing that Merck is in compliance with state law and statutes governing Merck's activities in the State of Louisiana through its participation in the Medicaid Program. Fourth, the State of Louisiana, as the legal representative

13

of the Louisiana Medicaid Fraud Control Unit, has an interest in seeing that participants in the Louisiana Medicaid Program are in full compliance with federal and state requirements and laws. Fifth, the State of Louisiana, as *parens patriae* has an interest in the physical and economic health and well-being of the citizens directly affected by Merck's pricing scheme and false claims and reports made in connection with Merck's participation with the Medicaid Program in the State of Louisiana.

In a similar case, the Fifth Circuit in *Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997), granted an intervention as of right to the State of Texas to protect the state's interests in environmental lawsuit instituted by the Sierra Club. In that case, the Court found that the State of Texas had the requisite interest to intervene into a lawsuit brought under the Endangered Species Act. 16 U.S.C. § 1531, et seq. by an environmental advocacy group. The Fifth Circuit found that the State of Texas, in various capacities, had the requisite interests in the lawsuit to satisfy this requirement of intervention of right. Specifically, the Court found that the State had a sovereign interest in protecting the authority of the Texas Edwards Aquifer Act and in seeing that it was properly enforced; that the State of Texas, as legal representative of certain Texas environmental agencies, had an interest in the regulation of water rights and resources; that the State of Texas as

14

parens patriae had an interest in the economic health and well-being of its citizens directly affected by the allegations contained in the underlying action. *Id.* at 315.

Similarly, as stated above, in the instant case, the State of Louisiana, has various interests in the administration and regulation of the Medicaid Program and the pharmaceutical companies who participate in the program in the State as well as an interest in the health and economic well being of its citizens. Accordingly, in following the rationale and holding of Sierra Club v. City of San Antonio, supra, the State of Louisiana has the requisite interest in the lawsuit and therefore, should be allowed to intervene as of right.

### 3.    The disposition of the underlying lawsuit may impair or impede the State of Louisiana's ability to protect its interest.

The potential intervenor must be situated so that the disposition of the case into which he seeks to intervene may impair or impede the ability to protect his interest. *Doe #1*, 256 F3d at 379. In1966, Federal Rule 24(a) was amended "to no longer require a showing by the applicant for intervention that he will be bound by the disposition of the action." *Edwards*, 78 F.3d at 1005. "The current practical impairment standard represents a liberalization of the prerequisites to intervention." *Id.* citing *Texas E. Transmission Corp.*, 923 F.2d at 413; *United States v. City of Jackson*, 519 F.2d 1147, 1150 (5th Cir. 1975).

15

Accordingly, the State of Louisiana has a direct and vital interest in the outcome of the underlying litigation. Mercks' activities and pricing scheme, as alleged in the underlying action has a direct bearing on the State of Louisiana in that the State contributes to the Medicaid Program. Therefore, any alleged violations in the underlying suit have a direct impact on the State of Louisiana. In addition, the State of Louisiana has an interest and legal right to participate in the briefing, presentation of evidence and appeal determinations made with respect to the subject matter of the underlying lawsuit. Specifically, Merck's pricing scheme and activities regarding the Medicaid Program and inducement activities that directly affect the citizens of the State of Louisiana.

### 4.    **Adequacy of Representation.**

The final requirement for intervention of right under Rule 24(a)(2) is that the would-be intervenor's interest not be adequately represented by existing parties. *Edwards*, 78 F.3d at 1005. The Supreme court has decided "[this] requirement . . . is satisfied if the applicant shows that representation of his interest may be 'inadequate; and the burden of making that showing should be minimal." Id. citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed. 2d 686 (1972).

In the instant case, the State of Louisiana is not adequately represented by Relator. In its lawsuit, Relator seeks retribution from defendant Merck for the federal portion of the Medicaid

16

payments that were excessive due to Merck's pricing scheme. The State of Louisiana is seeking

retribution for its share of the excess Medicaid expenditures against Merck, among other damages

to the citizens of the State of Louisiana and violations of state law.

In sum, in applying the principles established pursuant to Rule 24(a) (2) for intervention of

right to the application of the State of Louisiana, it is clear that the State of Louisiana motion for

leave to intervene should be granted as a matter of law.

**B. Permissive Intervention.**

In the alternative, this Honorable Court should permit the State of Louisiana to intervene

under Rule 24(b), which provides as follows:

> Upon timely application anyone may be permitted to intervene in an
> action (1) when a statute of the United States confers a conditional
> right to intervene; or (2) when a applicant's claim or defense and the
> main action have a question of law or fact in common. In exercising
> its discretion the court shall consider whether the intervention will
> unduly delay or prejudice the adjudication of the rights of the original
> parties.

Fed. R. Civ. P. 24(b).

"Permissive intervention is a two stage process. First, the court must decide whether one of

the grounds for such intervention exists under Rule 24(b). See *Stallworth*, 558 F2d at 269. If this

threshold is met, the court must then exercise its discretion in deciding whether intervention should

be allowed. Id. When acting on a request for permissive intervention, a district court should

consider, among other factors, whether the intervenors are adequately represented by the other parties

17

and whether they are likely to contribute significantly to the development of the underlying factual issues. *League of United Latin American Citizens, Counsel #4434 v. Clements*, 884 F.2d 185 (5th Cir. 1989).

Permissive intervention, as Rule 24(b)(2) provides, is appropriate in circumstances in which (1) the application is timely; (2) the moving party's claim or defense and the main action have a common question of law or fact; and (3) the proposed intervention will not unduly delay or prejudice the adjudication of the original parties' rights.

Under the former analysis and discussion, the first requirement that the application for intervention is timely filed is met by the State of Louisiana. Second, as also stated in the above analysis, the State of Louisiana's claims against Merck have both common questions of law and fact. Defendant in the underlying action, Merck, is the same defendant in the Complaint-in-Intervention and the same activities and same pricing scheme at issue in the underlying action are at issue in the Intervention. Further, issues of law regarding Merck's dealings with the state-federal Medicaid program are common to both the Relator's underlying suit and the Complaint-in Intervention. And, finally, as stated above, the parties to the underlying action will not be unduly delayed and/or prejudiced by the assimilation of the State of Louisiana in this lawsuit.

In addition, the State of Louisiana is not adequately represented by the Relator in this lawsuit. Finally, it is clear from the issues presented to this Honorable Court regarding Medicaid fraud that the State of Louisiana will certainly contribute significantly to the development of the underlying

18

factual issues. The Medicaid program relies on both state and federal funds and therefore, the State

of Louisiana's Intervention will undoubtedly be able to significantly contribute to the underlying

facts of the instant lawsuit.

## IV. CONCLUSION

In light of the foregoing, the State of Louisiana contends that the Motion for Leave to File

Complaint-in-Intervention as of Right and/or Permissive Intervention should be granted, as a matter

of law. In sum, in applying the principles established pursuant to Rule 24(a) (2) for intervention of

right to the application of the State of Louisiana, it is clear that the State of Louisiana motion for

leave to intervene should be granted as a matter of law. In the alternative, in applying the principles

established pursuant to Rule 24(b) for permissive intervention, the State of Louisiana's intervention

should be allowed on a permissive basis.

Respectfully submitted,

CHARLES C. FOTI, JR., Attorney General

By:

E. JOHN LITCHFIELD, T.A. (#8622)
MICHELLE L. MARAIST (#21739)
Special Assistant Attorneys General
BERRIGAN, LITCHFIELD, SCHONEKAS,
  MANN, TRAINA & THOMPSON, LLC
400 Poydras Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 568-0541
Fax: (504) 561-8655
*Attorneys for the State of Louisiana*

19

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record by placing same in the United States Mail, postage prepaid, this 21ST day of January, 2004.

**MICHELLE M. MARAIST**



# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *EX REL.*, | * | CIVIL ACTION NO. 99-3807 |
| WILLIAM ST. JOHN LACORTE, M.C. | * | |
| | * | SECTION  I |
| versus | * | |
| | * | MAGISTRATE  4 |
| MERCK & CO., INC. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF HEARING ON MOTION FOR LEAVE TO FILE
## COMPLAINT- IN- INTERVENTION

PLEASE TAKE NOTICE that on _Feb_ , _11_ , 2004 at _11.00_ _A_ m. or at the

convenience of the Court, mover, the State of Louisiana, will bring before this Court its Motion for

Leave to File its Complaint-in-Intervention.

Respectfully submitted,

CHARLES C. FOTI, JR., Attorney General

By: _Michelle L Maraist_

E. JOHN LITCHFIELD, T.A. (#8622)
MICHELLE L. MARAIST (#21739)
**Special Assistant Attorneys General**
BERRIGAN, LITCHFIELD, SCHONEKAS,
    MANN, TRAINA & THOMPSON, LLC
400 Poydras Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 568-0541
Fax: (504) 561-8655

21



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading has been served on all counsel, by facsimile and First Class, U.S. Mail, postage prepaid and properly addressed this 21ST day of January, 2004.

**MICHELLE L. MARAIST**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *EX REL.,* | * | **CIVIL ACTION NO. 99-3807** |
| WILLIAM ST. JOHN LACORTE, M.D. | * | |
| | * | **SECTION "I"** |
| versus | * | **Judge Lance M. Africk** |
| | * | |
| | * | **MAGISTRATE 4** |
| MERCK & CO., INC. | * | **Mag. Judge Karen Wells Roby** |
| DEFENDANT | * | |

*******************************************

### COMPLAINT IN INTERVENTION BY THE STATE OF LOUISIANA, *EX REL,* CHARLES C. FOTI, JR., ATTORNEY GENERAL

The State of Louisiana, through its Attorney General, CHARLES C. FOTI, JR, submits this

Complaint-in-Intervention against defendant, Merck & Co., Inc. and upon information and belief

avers as follows:

## I. INTRODUCTION

1.       The State of Louisiana, through Attorney General, Charles C. Foti, Jr (hereinafter

referred to as the "State of Louisiana"), brings this Complaint-in-Intervention against

defendant, Merck & Co., Inc. (hereinafter to as "Merck"), a foreign corporation

authorized to do business in the State of Louisiana, for money damages, penalties,

declaratory and injunctive relief, restitution, punitive, and treble damages on behalf

Page 1 of 19

of the State of Louisiana who has paid unlawful charges for medications based on Merck's unlawful activities and Merck's violations of federal and state laws, which are described hereinafter with particularity.

2.     The State of Louisiana, along with the federal government, contributes to the Medicaid Program, as well as other state and federally funded health care insurers, and therefore has a direct interest in the outcome of this litigation asserted by Relator in the Consolidated Complaint for Money Damages and Civil Penalties Under the False Claims Act (hereinafter referred to as the "Complaint") and is Intervening in this action to assert and protect its rights.

3.     As a contributor to the Medicaid Program and other federally and state funded health care insurers, the State of Louisiana has expended state funds to pay substantial and excessive amounts for pharmaceuticals manufactured, marketed and/or sold by Merck.

4.     As a contributor to the Medicaid Program and other federally and state funded health care insurers, the State of Louisiana, was injured by the wrongful actions of Merck, as alleged herein and in Relator's Complaint.

5.     The State of Louisiana, as *parens patriae*, brings this suit for restitution on behalf of persons in Louisiana, whose interests have been harmed by the unlawful actions of defendant, Merck.

## II. PARTIES

6.      This action is brought for and on behalf of the State of Louisiana by Charles C. Foti,

Jr., Attorney General of the State of Louisiana, pursuant to, *inter alia,* the False

Claims Act, 31 U.S.C. §§ 3729 *et seq.,* the provisions of the Louisiana Unfair Trade

Practices and Consumer Protection Law., La.R.S. 51:1401, *et seq.;* Louisiana's

Medical Assistance Programs Integrity Law, La.R.S. 46:437.1, *et seq.;* Louisiana's

Anti-Monopoly Statute, La.R.S. 51:121, *et seq.*; the authority vested by the Louisiana

Constitution Article IV, § 8; the authority of the Attorney General of Louisiana to

institute and prosecute any and all suits deemed necessary for the protection of the

interests and rights of the State, La.R.S. 13:5036; and under the State of Louisiana's

*parens patriae* authority.

7.      Defendant, Merck, is a foreign corporation that conducts business within the State

of Louisiana.   Defendant-in-Intervention, contracts with local hospitals and other

health care institutions to sell its version of an H2 blocker, namely Pepcid.

8.      Plaintiff, the United States of America, and Relator, William St. John LaCorte, M.D.,

a citizen of the United States and resident of the State of Louisiana, has instituted this

lawsuit for money damages and civil penalties arising out of Merck's violations of

the False Claims Act, 31 U.S.C. §§ 3729, *et seq.,* as plead in the Consolidated

Complaint for Money Damages and Civil Penalties Under False Claims Act, 31

U.S.C. §§ 3729-33.

### III.  JURISDICTION and VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to its Supplemental Jurisdiction over the claims asserted in this Complaint-in-Intervention, provided in 28 U.S.C.§ 1367.

10.     This Court has jurisdiction over this Intervention and the actions brought under State law pursuant to 31 U.S.C. § 3732(b).

11.     This Court has personal jurisdiction over the Defendant-in-Intervention because, among other reasons, the Defendant-in-Intervention transacts business in the Eastern District of Louisiana, and Defendant-in-Intervention engaged in wrongful conduct in this District.

12.     This Court has jurisdiction over the claims asserted in this Intervention pursuant to 42 U.S.C. § 1396b(q), which establishes the states Medicaid Fraud Control Units.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c).

14.     This Intervention is one of right based on the Intervenor's interest relating to the transactions and circumstances which are subject of this action.  Disposition of this action will impair and/or impede Intervenor's ability to protect its interests because said interests are not adequately represented by the parties named in the underlying lawsuit.

## IV.  GENERAL ALLEGATIONS

15.     The State of Louisiana, through Attorney General Charles C. Foti, Jr., brings this

action for monetary damages, civil penalties, declaratory and injunctive relief,

restitution and punitive damages on behalf of the State of Louisiana, and its citizens,

who have paid inflated charges for medications based on Merck's pricing scheme and

practices, described herein and in the underlying Complaint.

16.     Medicaid is a jointly funded, federal-state health insurance program for certain low

income people.  It covers approximately 44 million individuals, including children,

the aged, blind, and/or disabled, and people who are eligible to receive federally

assisted income maintenance payments.

17.     The State of Louisiana contributes approximately twenty-nine percent of the total

Medicaid expenditures in the State of Louisiana.

18.     In order to participate in the Medicaid Program, pharmaceutical companies are

required, by law, to quote and charge the "best price" of its drug, as established by

law.

19.     The "best price", pursuant to the law, is the lowest price that other prudent and cost

conscious buyers would incur for a given drug.

## V.  MERCK'S UNLAWFUL ACTIONS

Upon information and belief, the State of Louisiana alleges the following:

20.  Defendant, Merck, distributes the drug known as Famotidine, marketed under the brand name Pepcid, to hospitals and other related health care institutions for approximately $0.10 per tablet through a competitive pricing program.

21.  Defendant, Merck, does not offer this pricing system to the Medicaid Program or other state and federal programs, charging approximately $1.65 per tablet, and higher amounts for IV Pepcid.

22.  At all relevant times, Pepcid could only be purchased through Merck under its brand name.

23.  Merck's pricing scheme induced hospitals to switch patients' prescriptions to Pepcid without the permission of the physicians treating the patients.

24.  At all relevant times, Merck's pricing scheme was used to induce hospitals to use Pepcid as its preferred H2 blocker and to switch patients to Pepcid, so that they may be discharged on this drug, thereby requiring these patients to seek outpatient acquisition of the drug at higher than market prices for other H2 blockers.  This program results in unnecessarily high costs to the patients and to Medicaid and other joint state and federal programs.

25.  At all relevant times, Merck's pricing scheme was utilized throughout the State of Louisiana as early as 1993, at facilities such as Medical Center of Louisiana in New Orleans, River Parishes Hospital, Chalmette Medical Center, Memorial Medical Center, Mercy and Baptist Campuses, Touro Infirmary, East Jefferson General Hospital, Life Care Hospitals.

26.   The practice of switching physicians' orders to alternative classes of a particular drug which were never ordered by physicians, and not disclosing to physicians and hospitals the effects on patients, Medicaid, and their payment programs, has resulted in an expenditure of state funds above and beyond that which would otherwise have been required.

27.   Merck has developed, through this pricing scheme, a system to defraud Medicaid by inducing large numbers of patients discharged from hospitals and other health care facilities onto Pepcid prescriptions, with the knowledge and intent that these patients would continue to need H2 blockers after discharge from these facilities.

28.   As a direct consequence of Merck's wrongful conduct, the State of Louisiana has been required to expend state funds and state tax dollars to pay substantial and excessive amounts for pharmaceuticals over and above the cost at which other facilities are able to acquire this drug.

29.   At all relevant times, Merck, its agents, subsidiaries and employees unlawfully and knowingly devised and carried out a scheme to defraud the Medicaid program and other health programs as well as the State of Louisiana, and to impair, impede, obstruct, and defeat the lawful governmental functions of these programs and did unlawfully and knowingly:

   a..   Charge and continue to charge fraudulently inflated prices of its H2 blocker, namely Pepcid, to Medicaid for payment and approval;

b.    Make, use, and cause to be made and used false statements in order to have these false and fraudulent claims paid by the Medicaid Program;

c.    Conspired to defraud the State of Louisiana by causing false and fraudulent claims to be allowed and to be paid.

30.    In furtherance of this scheme to defraud and submit false and fraudulent claims to the State of Louisiana, Merck through its employees, agents, and subsidiaries committed to following acts, among others:

a.    Merck charged inflated prices to Medicaid and other state funded health programs, while at the same time sold other institutions the same drug at vastly reduced prices.

b.    Merck knowingly created this pricing scheme in order to have large numbers of patients be given and/or prescribed Pepcid, many of which were Medicare and Medicaid recipients, with the specific knowledge that upon discharge these patients would need outpatient H2 blockers at vastly inflated prices for extended periods of time.

c.    Merck, through the use of its pricing scheme, wrongfully induced hospitals and other related health care institutions to switch valid orders for other H2 blockers to Pepcid, without seeking permission or consent from the treating physician or licensed practitioner.

d.     Merck created and carried out this scheme without adequate testing on patients, knowing Pepcid would be given to elderly patients who were acutely ill and were likely to have significant diseases.

e.     Merck knew or should have known that Pepcid, which is primarily eliminated by the kidneys, would be substituted for Zantac and other H2 blockers, and Merck failed to adequately warn doctors to use a lower dosage even after published data indicated a serious toxic effect of mental function.

31.    Merck, through its agents, employees, and subsidiaries, did unlawfully and knowingly devise and carry out a scheme to defraud the State of Louisiana and the federal government, in general and the Medicare and Medicaid Programs and state funded programs in particular, and to impair, impede, obstruct, and defeat the lawful governmental functions of these programs and did unlawfully and knowingly:

a.     File or caused to be filed false claims and reports to the State of Louisiana for reimbursement from various government programs which contain unauthorized orders for its drugs.

b.     That these orders were not prescribed by a physician, and therefore are illegal attempts to usurp physicians' independent medical judgment.

c.     File false reports and claims to state agencies for the computation of prices for rebate programs administered by the federal government and states, including but not limited to best price, average wholesale price, and average

manufacturers price certifications, including but not limited to those requirements set forth in 42 U.S.C. § 1396 r-8.

d.     Merck controlled the published data and could manipulate those prices to maximize reimbursement and to avoid its obligation to pay rebates to state and federal government agencies.

e.     Merck used its position as the reporter of data to prevent, interfere with, and obstruct government health programs from receiving the intended benefit of the lowest prices set forth by Congress in its enactment of those relevant statutes.  That said actions are in violations of 31 U.S.C. 3729 *et seq.;* the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51: 1401, *et seq.*; Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46:437.1, *et seq.*; Louisiana's Anti-Monopoly Statute, La.R.S. 51:121, *et seq.*, and constitute fraud and unjust enrichment under Louisiana law.

32.    By such acts, Merck has caused a monetary loss to the State of Louisiana, through the Medicaid Program, Medicare, and other state funded payment systems, the amount of which loss is the aggregate of the amounts expended on the following, among others:

a.     The cost differential between the prices charged to Medicaid for Pepcid, and the discounted prices charged to hospitals and other related health care institutions through this pricing scheme all of which are in violation of 31

Page 10 of 19

U.S.C. § 3729 *et seq.*;  the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51: 1401, *et seq.*; Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46:437.1, *et seq.*; Louisiana's Anti-Monopoly Statute, La.R.S. 51:121, *et seq.*, and constitute fraud and unjust enrichment under Louisiana law.

33.  Merck, through the use of its pricing scheme, induced hospitals to switch to Pepcid by offering price breaks and discounts in exchange for documented market share in each hospital.

34.  This pricing system is structured based on the percentage of Pepcid used as compared to the total H2 blocker usage in the particular hospital or health care facility.

35.  Merck, through its agents, employees and subsidiaries, unlawfully and knowingly devised and carried out a scheme to defraud the State of Louisiana in general and the Medicaid Program and other state-funded health programs in particular, and to impair, impede, obstruct, and defeat the lawful governmental functions of these programs and did unlawfully and knowingly:

a.  Induce hospitals through indexed market share pricing discounts to switch H2 blocker usage from less expensive drugs to Pepcid;

b.  That such inducement was not merely a price discount, but was a remuneration to said hospitals in order to purchase Pepcid for use in patients covered by various federal and state health programs. That said inducements are in violation of 42 U.S.C. § 1320 s-7b; the Louisiana Unfair Trade

Page 11 of 19

Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq.*; Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46:437.1, *et seq.*; Louisiana's Anti-Monopoly Statute, La.R.S. 51:121, *et seq.*, and constitute fraud and unjust enrichment under Louisiana law.

36.     That said inducements by Merck to these various hospitals of this remuneration were to induce the switching of said prescriptions and the listing of Pepcid as a formulary drug, with the knowledge and for the purpose of discharging patients on Pepcid, for which payment would be made, in whole or in part, by federal and state programs, all to the benefit of defendant, as well as its agents, employees and subsidiaries.

37.     That Merck, should be found liable for violations of the Louisiana Medical Assistance Programs Integrity Law, La. R.S. 46:1401, *et seq.* and be subject to all penalties and damages as set forth therein.

38.     Defendant, Merck, through the use of its marketing, and pricing scheme of discounts in exchange for market share, induced hospitals to automatically substitute Pepcid for Zantac and other H2 blockers.  Merck knew or should have known that these drugs are not interchangeable due to toxicity, and that Pepcid will be used for unproven therapeutic values and indications for many conditions being treated. Therefore, Merck caused to be filed false claims for reimbursement of Medicare, Medicaid, and other government reimbursement programs.

39.     The pricing structure and its expected, foreseeable, and intended switch and dispensation is an illegal program to circumvent the clinical decision-making of

physicians and licensed practitioners, and constitutes the unauthorized practice of medicine, and further causes misbranding of drugs prohibited by the Louisiana Medical Assistance Programs Integrity Law, La. R.S. 46:437.1, *et seq.* This manipulation of the decision-making process at hospitals, and the unlawful exploitation of hospital bylaws and physicians' orders, result in the pharmacist unlawfully prescribing and inappropriately dispensing medication. Therefore, Defendant knew or should have known in advance that they will be causing a non-physician to unlawfully prescribe and dispense a drug for a non-FDA indicated purpose.

40.    Merck has caused by its actions a monetary loss to the State of Louisiana, state-funded health care programs, direct payment systems and the residents of the State of Louisiana.

41.    Merck's unlawful activities, including Merck's pricing scheme are in violation of Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq.;* Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46:437.1, *et seq.;* Louisiana's Anti-Monopoly Statute, La.R.S. 51:121 *et seq.*, and Louisiana state law theories of liability based on fraud and unjust enrichment.

## VI.

## COUNT I

## UNFAIR METHODS OF COMPETITION, UNFAIR OR DECEPTIVE ACTS OR PRACTICES IN TRADE OR COMMERCE

### (Violations of Louisiana's *Unfair Trade Practices and Consumer Protection Law,* La. R.S. 1401, et seq.)

### CLAIMS FOR RESTITUTION, CIVIL PENALTIES, INJUNCTIVE RELIEF FOR THE STATE OF LOUISIANA

42.     The State of Louisiana re-alleges the preceding paragraphs of this Complaint-in-Intervention as if fully set forth herein.

43.     This claim is brought for restitution, civil penalties, and injunctive relief, for the losses incurred by the State of Louisiana, and its citizens, as a result of Merck's pricing scheme and system to defraud the State of Louisiana, through the Medicaid Program and other state funded health insurance programs.

44.     Merck's unlawful conduct, as alleged in this Complaint-in-Intervention, constitutes unfair or deceptive acts or practices in the conduct of its trade and/or commerce in violation of La.R.S. 1401, *et seq.*

45.     By virtue of Merck's unlawful conduct, including false and misleading claims, the State of Louisiana and its citizens have sustained damages and therefore is entitled to multiple damages under the *Louisiana Unfair Trade Practices and Consumer Protection Law,* La. R.S. 1401, *et seq.*

## COUNT II

**(VIOLATIONS OF LOUISIANA'S ANTI-TRUST STATUTE, La.R.S. 51:121, et seq.)**

### CLAIMS FOR CIVIL PENALTIES AND DAMAGES CAUSED TO THE STATE OF LOUISIANA

46. The State of Louisiana re-alleges the preceding paragraphs of this Complaint-in-Intervention as if fully set forth herein.

47. This claim is brought for restitution, civil penalties, and injunctive relief, for the losses incurred by the State of Louisiana, and its citizens, as a result of Merck's pricing scheme and system to defraud the State of Louisiana, through the Medicaid program and other state funded health insurance programs.

48. Merck's unlawful conduct, as alleged in this Complaint-in-Intervention, and pricing scheme constitutes trade restriction and price fixing in violation of Louisiana's Anti-Trust Statute, La.R.S. 51:121, *et seq.*

49. By virtue of Merck's unlawful conduct, including the implementation of a fraudulent pricing scheme, the State of Louisiana and its citizens have sustained damages and therefore, are entitled to multiple damages under the Louisiana's Anti-Trust Statute, La.R.S. 51:121, *et seq.*

## COUNT III

**VIOLATIONS OF LOUISIANA'S MEDICAL ASSISTANCE PROGRAMS INTEGRITY LAW**

**(VIOLATION OF La.R.S. 46:437.1, et seq.)**

Page 15 of 19

50.    The State of Louisiana re-alleges the preceding paragraphs of this Complaint-in-
       Intervention as if fully set forth herein.

51.    This claim is brought for restitution, civil penalties, and injunctive relief, for the
       losses incurred by the State of Louisiana and its citizens, as a result of Merck's
       pricing scheme and system to defraud the State of Louisiana, through the Medicaid
       Program and other state funded health insurance programs.

52.    Merck's unlawful conduct, as alleged in this Complaint-in-Intervention and pricing
       scheme constitutes false claims, fraud and abuse under Louisiana's Medical
       Assistance Programs Integrity Law, La. R.S. 437.1, *et seq.*

53.    By virtue of Merck's unlawful conduct, including the implementation of a fraudulent
       pricing scheme, and false claims to the State of Louisiana, the State of Louisiana has
       sustained damages and therefore is entitled to multiple damages under the
       Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 437.1, *et seq.*

## COUNT V

## FRAUD

54.    The State of Louisiana re-alleges the preceding paragraphs of this Complaint-in-
       Intervention as if fully set forth herein.

55.    Merck, knowingly and intentionally, made or caused to be made false statements to
       the State of Louisiana regarding, among other things, the "best price," average
       wholesale price, and average manufactures price certifications for its drug, Pepcid,
       with the knowledge of their falsity and with fraudulent intent, to mislead the State of

Page 16 of  19

Louisiana, and upon which the State of Louisiana reasonably relied upon to its injury
and detriment.

56.     In reliance on said false statements by Merck, the State of Louisiana has sustained
damages in an amount to be determined at trial.

## COUNT VI

### UNJUST ENRICHMENT

57.     The State of Louisiana re-alleges the preceding paragraphs of this Complaint-in-
Intervention as if fully set forth herein.

58.     This is a claim for the recovery of monies by which Merck has been unjustly
enriched.

59.     As a result of the facts alleges herein, Merck has maintained control over monies to
which it is not entitled by virtue of its pricing scheme regarding Pepcid.

60.     By obtaining these monies through illegal actions and activities alleged herein, Merck
has been and is unjustly enriched and is liable to the State of Louisiana for those
amounts Merck has been enriched, in an amount to be determined at trial.

### PRAYER FOR RELIEF

**WHEREFORE,** Intervenor, the State of Louisiana, through its Attorney General, Charles
C. Foti, Jr., prays:

a.      That judgment be entered in favor of Intervenor, the State of Louisiana
through its Attorney General Charles C. Foti, Jr., and against the Defendant-
in-Intervention, Merck & Co., Inc.;

Page 17 of 19

b.    That the Court adjudge and decree that Merck has engaged in the unlawful conduct alleged herein;

c.    That the Court adjudge that Merck's conduct is unlawful and in violation of the provisions of the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq.;* Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46:4371.1, *et seq.;* and Louisiana's Anti-Monopoly Statute, La.R.S. 51:121, *et seq.;*

d.    That the Court adjudge that Merck's conduct is unlawful and constitutes fraud against the State of Louisiana;

e.    That the Court adjudge that Merck's unlawful conduct resulted in unjust enrichment to Merck at the expense of the State of Louisiana;

f.    That defendant, Merck & Co., Inc., be ordered and adjudged to make full restitution to the State of Louisiana of all monies that the State of Louisiana wrongfully expended, in particular in connection with the Medicaid program, as a result of the wrongful and unlawful conduct;

g.    That Defendant, Merck & Co., Inc., be assessed all fines, penalties, and attorneys' fees and costs, pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, La.R.S. 51:1401, *et seq.;* Louisiana's Medical Assistance Programs Integrity Law, La.R.S. 46:437.1, *et seq.;* Louisiana's Anti-Monopoly Statute, La.R.S. 51:121, *et seq.* and Louisiana law; and

h.  That the State of Louisiana, through its Attorney General Charles C. Foti, Jr.,

be awarded all other general, legal, and equitable relief as this Honorable

Court may deem appropriate.

Respectfully submitted,

**CHARLES C. FOTI, JR, Attorney General**

By:

**E. JOHN LITCHFIELD, T.A. (#8622)**
**MICHELLE L. MARAIST (#21739)**
**Special Assistant Attorneys General**
**BERRIGAN, LITCHFIELD, SCHONEKAS,**
    **MANN, TRAINA & THOMPSON, LLC**
400 Poydras Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: (504) 568-0541
Fax: (504) 561-8655
*Attorneys for the State of Louisiana*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record by placing

same in the United States Mail, postage prepaid, this _21ˢᵗ_ day of January, 2004.

**MICHELLE M. MARAIST**

Page 19 of 19