UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., WILLIAM ST. JOHN LACORTE, M.D. | * * | CIVIL ACTION NO. 99-3807 |
| Plaintiffs | * | SECTION: "I" (4) |
| | * | |
| v. | * | |
| MERCK & CO., INC. | * | |
| Defendants | | |

## RULE 12 DEFENSE, ALTERNATIVE ANSWER, ALTERNATIVE AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF WILLIAM ST. JOHN LACORTE, M.D.

Now into court comes William St. John LaCorte, M.D., M.P.H. ("Dr. LaCorte"), through undersigned counsel, who in response and answer to the Complaint-in-Intervention of Boone & Stone and Vezina & Gattuso, LLC ("Intervenors") does aver and plead as follows:

### FRCP 12 DEFENSE

I.

Dr. LaCorte avers that with regard to some or all of the claims plead by Intervenors, the merits of which are specifically denied, Intervenors have failed to state a claim, cause or right of action upon which relief can be granted.

### ALTERNATIVE ANSWER

In the event that all of Intervenors' claims are not defeated by the foregoing FRCP 12 defenses, defendant alternatively answers the specific averments of plaintiff's complaint as follows:

1.

The allegations contained in paragraph 1 are admitted.

2.

The allegations of paragraphs 2 are denied as written. Further responding, Dr. LaCorte avers that had he been given full and proper advice by Intervenors he either would not have agreed to settlement at the stated level or would have required clarification of the amount of fee due to his attorneys pursuant to the Client .

3.

The allegations of paragraph 3 are admitted.

4.

The allegations of paragraph 4 constitute legal conclusions for which no response is necessary. To the extent a response is required, they are denied

5.

The allegations of paragraph 5 constitute legal conclusions for which no response is necessary. To the extent a response is required, they are denied. Furthermore, the Intervenors' entire pleadings are the best statement of their claim.

6.

The allegations of paragraph 6 are admitted.

7.

The allegations of paragraph 7 are admitted, except to note that Scott Vezina, prior to his leaving the firm of Vezina & Gattuso, LLC, also represented Dr. LaCorte and provided advice concerning the Merck matter.

8.

The allegations of paragraph 8 are admitted.

9.

The allegations of paragraph 9 are admitted.

10.

The allegations of paragraph 10 are admitted.

11.

The allegations of paragraph 11 are admitted with the exceptions of the exact name of the law firm described therein, whether it was Sakla & Slack, LLC or Sakla & Slack, APLC. Further responding, the exact date of the dissolution of the law firm in which Mr. Todd Slack and Dr. Sherif Sakla practiced together is not known to Dr. LaCorte.

12.

The allegations of paragraph 12 are admitted.

13.

The allegations of paragraph 13 are denied as written. Mr. Slack has filed a separate Complaint-in-Intervention, which is the best evidence of his claims as asserted before this Honorable Court.

14.

The allegations of paragraph 14 are admitted, except as to the exact date of the dissolution of Sakla & Slack, which is not known to Dr. LaCorte.

15.

The allegations of paragraph 15 are denied as written. Further responding, Dr. LaCorte avers that a new agreement, entitled Representation Contract, was executed. Dr. LaCorte further avers that the Representation Contract is in violation of the Louisiana Rules of Professional Conduct, which are the ethical rules adopted by the United States District Court for the Eastern District of Louisiana, such that the Representation Contract is null and void. The details of this averment will be set forth in more detail in Dr. LaCorte's counterclaim below.

16.

The allegations of paragraph 16 are denied as written. Further responding, Dr. LaCorte avers that a Representation Contract, was executed. Dr. LaCorte further avers that the Representation Contract is in violation of the Louisiana Rules of Professional Conduct, which are the ethical rules adopted by the United States District Court for the Eastern District of Louisiana, such that the Representation Contract is null and void. The details of this averment will be set forth in more detail in Dr. LaCorte's counterclaim below. As for the description of the contents of the Representation Contract contained in Paragraph 16, Dr. LaCorte avers that the Representation Contract document is, itself, the best evidence of its terms.

17.

The allegations of paragraph 17 are denied as written. Further responding, Dr. LaCorte avers that a Representation Contract, was executed. Dr. LaCorte further avers that the Representation Contract is in violation of the Louisiana Rules of Professional Conduct, which are the ethical rules adopted by the United States District Court for the Eastern District of Louisiana, such that the Representation Contract is null and void. The details of this averment will be set forth in more detail in Dr. LaCorte's counterclaim below. As for the description of the

contents of the Representation Contract contained in Paragraph 16, Dr. LaCorte avers that the Representation Contract document is, itself, the best evidence of its terms.

18.

The allegations of paragraph 18 are denied as written. Further responding, Dr. LaCorte avers that any fee splitting between attorneys other than members of the same law firm for work performed in the United States District Court for the Eastern District of Louisiana would be governed by the Louisiana Rules of Professional Conduct, Rule 1.5(e). Dr. LaCorte further avers that he has not agreed in writing to the Fee Sharing Agreement, and therefore that Fee Sharing Agreement is in violation of Rule 1.5(e) and is null and void.

19.

The allegations of paragraph 19 constitute legal conclusions for which no response is necessary. To the extent a response is required, they are denied

20.

The allegations of paragraph 20 are admitted.

21.

The allegations of paragraph 21 are denied as written. Further responding, Dr. LaCorte avers that it is not relevant whether the United States intervened or not within the meaning of the False Claims Act because the misconduct or neglect of Intervenors in the investigation and prosecution of the Merck claim renders them ineligible for contingency fee recovery and only eligible for a quantum meruit recovery. Furthermore, the conduct described in the counterclaim renders the Intervenors liable for damages in excess of any and all fees to which Intervenors may otherwise be entitled.

22.

The allegations of paragraph 22 are denied as written. Further responding, Dr. LaCorte avers that it is not relevant whether the United States intervened or not within the meaning of the False Claims Act because the misconduct or neglect of Intervenors in the investigation and prosecution of the Merck claim renders them ineligible for contingency fee recovery and only eligible for a quantum meruit recovery. Furthermore, the conduct described in the counterclaim renders the Intervenors liable for damages in excess of any and all fees to which Intervenors may otherwise be entitled.

23.

The allegations of paragraph 23 are denied as written. Further responding, Dr. LaCorte avers that it is not relevant whether the United States intervened or not within the meaning of the False Claims Act because the misconduct or neglect of Intervenors in the investigation and prosecution of the Merck claim renders them ineligible for contingency fee recovery and only eligible for a quantum meruit recovery. Furthermore, the conduct described in the counterclaim renders the Intervenors liable for damages in excess of any and all fees to which Intervenors may otherwise be entitled.

24.

The allegations of Paragraph 24 are denied as written. Further responding, Dr. LaCorte avers that the Intervenors are not due a 40% fee because the Representation Contract is null and void, and for the various actions described in the counterclaim below, such that they are liable for legal malpractice, breach of fiduciary duty, and/or other fault.

25.

The allegations of paragraph 25 are denied for a lack of sufficient information to justify a belief therein. Further responding, Dr. LaCorte avers that Louisiana law controls the relationship

between attorneys who are co-counsel for a litigant in the United States District Court for the Eastern District of Louisiana, and that Louisiana law does not recognize a claim for breach of fiduciary duty between co-counsel in such a situation as it places the duties of one attorney to another over that attorney's duty to the client.

26.

The allegations of paragraph 26 constitute legal conclusions for which no response is necessary. To the extent a response is required, they are denied.

27.

The allegations of paragraph 27 constitute legal conclusions and prayers for relief for which no response is necessary. To the extent a response is required, they are denied.

28.

The allegations of paragraph 28 constitute legal conclusions and prayers for relief for which no response is necessary. To the extent a response is required, they are denied.

29.

The allegations of paragraph 29 are denied as written. Further responding, Dr. LaCorte avers that Intervenors have acted in bad faith, including, but not limited to their failure to make available to him his client file material for review, failure to fully disclose matters to him, and failure to represent him in a professional and non-confrontational fashion. Further responding, Dr. LaCorte avers that attorney's fees are not available as they are not provided for in the Representation Contract in the event of a dispute between Dr. LaCorte and Intervenors.

30.

The allegations of the prayer for relief constitute legal conclusions and prayers for relief for which no response is necessary. To the extent a response is required, they are denied.

## ALTERNATIVE AFFIRMATIVE DEFENSES

In the event that all of plaintiff's claims are not defeated by the foregoing FRCP 12 defenses and alternative answer, Dr. LaCorte alternatively responds that some or all of Intervenors' claims fail because of affirmative defenses as follows:

31.

### First Affirmative Defense

As a further separate and alternative affirmative defense, Dr. LaCorte avers that the Intervenors in this proceeding were at fault and/or negligent and such fault and/or negligence was the sole proximate or a proximate cause of the alleged losses and damages complained of herein, and that the alleged damages complained of herein and such fault and/or negligence by Intervenors is pled as a complete bar and/or diminution and reduction of any recovery herein by Intervenors against Dr. LaCorte; Dr. LaCorte further pleads as a partial or complete bar and/or reduction to any recovery by the Intervenors in these proceedings against him, such fault, negligence, contributory negligence, comparative negligence or assumption of risk by these Intervenors.

32.

### Second Affirmative Defense

As a further separate and alternative affirmative defense, Dr. LaCorte avers that the Intervenors' claims against Dr. LaCorte may be barred, in whole or in part, by the equitable doctrines of waiver, estoppel, unclean hands, laches, mitigation of damages, acquiescence, agreement, and other equitable doctrines.

33.

### Third Affirmative Defense

Dr. LaCorte avers as an affirmative defense that to the extent any actions were taken for any improper motive, which is explicitly denied, Dr. LaCorte also undertook such actions with other proper motives and goals, such that any recovery is barred or decreased accordingly.

34.

Fourth Affirmative Defense

.   Dr. LaCorte specifically reserves the right to further amend and amplify these affirmative defenses.

**COUNTERCLAIM**

Now assuming the role of Plaintiff-in-Counterclaim, Dr. LaCorte avers as follows:

I.

Made Plaintiff-in-Counterclaim herein is William St. John LaCorte, M.D. (hereinafter "Dr. LaCorte"), a person of the age of majority, domiciled in Florida.

II.

Made defendant herein are David Boone and Bill Stone, the partners in, and the partnership of Boone & Stone, which is, upon information and belief, a Georgia partnership of professional corporations.

III.

Made defendant herein is both J. Marc Vezina and his law firm of Vezina & Gattuso, L.L.C., which is a Louisiana limited liability company.

IV.

Dr. LaCorte executed a Representation Contract with Boone & Stone, Vezina & Gattusso, LLC, and The Sakla Law Firm concerning the provision of legal services in the Merck

matter, a matter pending in United States District Court for the Eastern District of Louisiana, and other legal matters.

V.

Messrs. William S. Stone and David Wm. Boone are attorneys licensed in the State of Georgia, the partners in Boone & Stone, appeared pro hac vice in the United States District Court for the Eastern District of Louisiana for the purpose of representing Dr. LaCorte. In so doing, they subjected themselves to the Louisiana Rules of Professional Conduct, which have been adopted by the United States District Court for the Eastern District of Louisiana as the disciplinary rules for that court.

VI.

Mr. J. Marc Vezina of Vezina & Gattusso is a licensed Louisiana attorney who represented Dr. LaCorte in the relevant litigation in the United States District Court for the Eastern District of Louisiana.

VII.

The Representation Contract contains a choice of law provision that purports to make Georgia law the controlling law for all disputes related to the Representation Contract with regard to Boone & Stone. Via a pen and ink change to the contract form, the choice of law provision was amended to provide that Louisiana law the controlling law for all disputes related to the Representation Contract with regard to Vezina & Gattuso, LLC and The Sakla Law Firm.

VIII.

Based upon prevailing conflict of law principles, the execution of the contract by multiple parties in Louisiana, the performance of the majority of the contract performance in the Parish of Orleans, State of Louisiana, including court appearances in the United States District Court for

the Eastern District of Louisiana, and the public policy interest in Louisiana substantive law and the Louisiana Rules of Professional Conduct governing the practice of law in Louisiana, it is respectfully submitted that the choice of law clause in the Representation Contract is invalid insofar as it provides that Georgia law is the controlling law for any disputes arising out of the Representation Contract.

IX.

The Representation Contract contains numerous other clauses and provisions which do not comport or comply with Louisiana law and/or the Louisiana Rules of Professional Conduct. These provisions include, but are not limited to, provisions providing for the charging of interest on litigation expenses advanced by the attorneys, ownership of the client file by the attorney instead of the client, stacking of contingency fees if the attorneys are discharged and new attorneys are hired, punitive provisions imposing a fee on Dr. LaCorte if he declines to approve a settlement, and prohibiting any settlement which imposes a confidentiality obligation.

X.

By way of a facsimile dated January 23, 2008, Dr. LaCorte terminated Mr. Marc Vezina as his attorney in all matters in which Mr. Vezina represented Dr. LaCorte.

XI.

Prior to Dr. LaCorte terminating Mr. Vezina, Mr. Vezina had represented Dr. LaCorte while in a position of direct conflict of interest created by Mr. Vezina's own actions.

XII.

Mr. Vezina signed motions for admission pro hac vice for attorneys representing the States of Delaware, California, Nevada, and Texas, as well as the District of Columbia. In all of

these motions Mr. Vezina was identified as local counsel for the parties. All of these motions were filed on September 24 and 28, 2007.

XIII.

The States of Delaware, California, Nevada, and Texas, as well as the District of Columbia did not have interests aligned with those of Dr. LaCorte as of the time of the filing of the motions for admission pro hac vice. As set forth in the Intervenors' own pleading, Merck agreed to the total settlement amounts it would pay the United States and the several States who participated in the Medicaid program on September 28, 2007. The amount which would constitute the total Relator's Share was not set until the United States made an offer on behalf of itself and the several States on December 17, 2007.

XIV.

Upon information and belief, during the period of negotiation of the relator's share September 28, 2007 through December 17, 2007, Mr. Vezina was in constant communication with representatives of the United States and the several States concerning the amount of the relator's share in the Merck matter.

XV.

Although designated local counsel for the States of Delaware, California, Nevada, and Texas, as well as the District of Columbia, Mr. Vezina still owed them the same duties of loyalty, competence, and confidentiality that he already owed to Dr. LaCorte, his pre-existing client in the Merck matter. Thus, he was in violation of the Louisiana Rules of Professional Conduct, Rule 1.7(a)(1) in that he was representing directly adverse clients in the same matter.

XVI.

As the conflict described in paragraph XV involved the assertion of one claim by one client against another client, both represented by Mr. Vezina, in the same litigation, to wit, the claim for the relator's share, the conflict of interest was not susceptible of any waiver pursuant to the Louisiana Rules of Professional Conduct, Rule 1.7 (b)(3).

XVII.

Upon information and belief, Dr. LaCorte was damaged by Mr. Vezina's conflict of interest in that Mr. Vezina had conflicting loyalties and did not negotiate with the same zealous advocacy for Dr. LaCorte's position as to the relator's share because of his conflict of interest.

XVIII.

Additionally, Mr. Vezina failed to timely return all of Dr. LaCorte's client file materials, despite written demand for them both in the termination letter of January 23, 2007 and in numerous later written communications by Dr. LaCorte and/or others acting on his behalf. This constitutes a violation of the Louisiana Rules of Professional Conduct, Rule 1.16.

XIX.

Additionally, Boone & Stone have not returned any client file materials to Dr. LaCorte, despite written demand for them in his email terminating them on February 7, 2008, and in numerous later written communications by Dr. LaCorte and/or others acting on his behalf. This constitutes a violation of the Louisiana Rules of Professional Conduct, Rule 1.16.

XX.

Mr. Vezina's refusal to timely surrender Dr. LaCorte's client file materials, and Boone & Stone's failure to surrender materials at all have damaged Dr. LaCorte in that these errors or omissions have impaired Dr. LaCorte's ability to pursue his claims in the present matter, as well as in other pending matters

XXI.

On more than one occasion, prior to their termination, Boone & Stone, communicated with Dr. LaCorte in a threatening or intimidating way.

XXII.

Upon information, Boone & Stone failed to exercise due diligence or the requisite standard of care in failing to take notice of Mr. Vezina's actions and inform Dr. LaCorte of Mr. Vezina's actions.

XXIV.

Prior to the termination of Boone & Stone and Vezina & Gattuso, L.L.C., the state of communications between Dr. LaCorte and those firms had deteriorated such that Dr. LaCorte could not communicate amicably or with confidence that he was being competently and candidly advised by them. Additionally, both Boone & Stone and Vezina & Gattuso, L.L.C. have directly failed to follow explicit client directives.

XXV.

Prior to the termination of Boone & Stone and Vezina & Gattuso, L.L.C., Dr. LaCorte learned from Dr. Sakla that the Representation Contract likely contained improper clauses and needed to be reformed or nullified and a new contract formed. Neither Boone & Stone nor Vezina & Gattuso have ever acknowledge the improper clause or taken any action to correct them. Rather, they have attempted to enforce or otherwise use those improper clauses to the detriment of Dr. LaCorte. Absent the warning provided by Dr. Sakla, they would have been in a stronger position to use those contract clauses against Dr. LaCorte.

XXVI.

The original draft of the Merck settlement documents sent to Dr. LaCorte reflected that the United States had intervened such that a lower fee rate would apply under the terms of the Representation Contract. Upon information and belief, Vezina and/or Boone & Stone caused that draft to be modified prior to the final version of the Merck settlement in order to facilitate their claim to higher fee under the terms of the Representation Contract. Additionally, Vezina and Boone & Stone failed to communicate the change to Dr. LaCorte so that he could consider it in his evaluation of the settlement negotiations.

XXVII.

The acts described in paragraphs I through XXVII constituted good cause for termination, including misconduct or neglect in the investigation and prosecution of claims, by Vezina & Gattuso and Boone & Stone, such that even under the Representation Contract asserted to be valid by Intervenors, they are only due quantum meruit recovery, not the contingency fee percentage set forth in the Representation Contract.

XXVIII.

Boone & Stone presented the Representation Contract to Dr. LaCorte as including a 33 1/3% contingency option and a 40% contingency option, with the fee option or level to be determined by whether the United States "intervened" in the litigation as a plaintiff. The representation contract at issue was not signed until June 24, 2004.

XXIX.

Intervenors have now taken the position that the 40% fee option became irrevocable in 2003, when the United States declined to intervene. Thus, the presentation of a contract

containing a 33 1/3% contingency option was an intentional misrepresentation and/or negligent misrepresentation.

XXX.

Dr. LaCorte was damaged by the intentional misrepresentation and/or negligent misrepresentation described in paragraphs XXVIII and XXIX in that had Intervenors disclosed to him that the contract they had drafted only had one fee option, he would have sought other counsel who were willing to negotiate other fee terms.

XXXI.

Upon information and belief, Mr. Vezina has involved himself as counsel in other qui tam litigation on behalf of other relators utilizing privileged client information belonging to Dr. LaCorte, and has profited thereby.

XXXII.

Mr. Vezina's actions, the actions of Vezina & Gattuso, and the actions of Boone & Stone, acts as described in paragraphs I through XXXI constitute acts of breach of fiduciary duty and legal malpractice, which have damaged Dr. LaCorte, and for which they are liable.

WHEREFORE, William St. John LaCorte, M.D., M.P.H. prays that due proceedings be had and that there be judgment herein in favor of William St. John LaCorte, and against Vezina & Gattusso, L.L.C. and Boone & Stone, defendant for the following relief:

1.  A Judgment in his favor on all of the claims asserted by the Intervenors dismissing their claims with prejudice and at their cost,

2.  A Judgment in his favor on all of the claims asserted by Dr. LaCorte against Vezina & Gattuso, L.L.C. and Boone & Stone, including claims for damages, costs, and legal interest from the date of judicial demand,

3. Declaratory Judgment that the Representation Contract is subject to interpretation under Louisiana law;

4. A Declaratory Judgment that the clauses contained in the Representation Contract, as identified hereinabove, which are in conflict with Louisiana law and/or the Louisiana Rules of Professional Conduct, and that because of the improper clauses the Representation Contract is null and void;

5. A Judgment that Vezina & Gattuso and Boone & Stone are not eligible for a contingency fee in this matter and setting the quantum meruit fee, if any, that each of those firms is eligible to receive; and

6. Such further and other legal and equitable relief as the court shall deem necessary and proper.

Respectfully submitted,

s/Donald L. Hyatt, II
DONALD L. HYATT, II (24808)
DONALD L. HYATT, II APLC
1100 Poydras St., Ste. 2960
New Orleans, LA 70163
Telephone: (504) 582-2466
Facsimile: (504) 582-2422
E-Mail: hyattlaw@aol.com
***COUNSEL FOR RELATOR,***
***WILLIAM ST. JOHN LACORTE, M.D.***

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2008, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document by first class mail to all non-CM/ECF participants.

                                                  s/Donald L. Hyatt, II

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, <br> ex rel., WILLIAM ST. JOHN <br> LACORTE, M.D. <br><br> Plaintiffs <br><br> vi. <br><br> MERCK & CO., INC. <br><br> Defendants | * <br> * <br> * <br> * <br> * <br> * <br> * | CIVIL ACTION <br><br> NO. 99-3807 <br><br> SECTION: "I" (4) |

### RULE 12 DEFENSE, ALTERNATIVE ANSWER, ALTERNATIVE AFFIRMATIVE DEFENSES, AND COUNTERCLAIM OF WILLIAM ST. JOHN LACORTE, M.D.

### AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, undersigned Notary Public, personally came and appeared:

**WILLIAM ST. JOHN LACORTE, M.D., M.P.H.**

who, deposed and said:

1. He is the Defendant-in-Intervention and Plaintiff-in-Counterclaim in the foregoing Rule 12 Defense, Alternative Answer, Alternative Affirmative Defenses, and Counterclaim of William St. John LaCorte, M.D.;

2.   He has read said Rule 12 Defense, Alternative Answer, Alternative Affirmative Defenses, and Counterclaim of William St. John LaCorte, M.D.;

3.   All of the allegations of fact contained in the Rule 12 Defense, Alternative Answer, Alternative Affirmative Defenses, and Counterclaim of William St. John LaCorte, M.D. are true and correct to the best of her knowledge.

*/s/ William St. John LaCorte, M.D., M.P.H.*
**WILLIAM ST. JOHN LACORTE, M.D., M.P.H.**

Sworn to and subscribed before me
this 14th day of April, 2008.

*/s/*
NOTARY PUBLIC
Donald L. Hyatt, II
LSBA no. 24808